IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN - 9 2011

CLERK, U.S. DISTRICT COURT
by_____
Deputy

EVERITT H. HOWARD JR.,           §
                                 §
            Applicant,           §
                                 §
v.                               §    No. 4:10-CV-778-A
                                 §
RICK THALER, Director,           §
Texas Department of Criminal     §
Justice, Correctional            §
Institutions Division,           §
                                 §
            Respondent.          §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by applicant, Everitt H. Howard Jr., a state prisoner currently serving a 60-year sentence for his robbery conviction in the 213th District Court of Tarrant County, Texas, against Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division, respondent. After having considered the pleadings, state court records, and relief sought by applicant, the court has concluded that the petition should be denied.

## I.  Factual and Procedural History

On May 23, 2006, a jury in the 213th District Court of Tarrant County, Texas, found applicant guilty of robbing a Radio

Shack store by threat and assessed his punishment at 60 years confinement. (Clerk's R. at 51) Applicant appealed his conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused applicant's petition for discretionary review. *Howard v. State*, No. 2-06-185-CR, slip op., 2008 WL 902767 (Tex. App.-Fort Worth Apr. 3, 2008) (not designated for publication); *Howard v. State*, PDR No. 652-08. (Pet. at 2) Applicant also filed a state application for writ of habeas corpus challenging his conviction, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court. *Ex parte Howard*, Appl. No. WR-28,521-02, at cover. This federal petition was timely filed.

The state appellate court summarized the factual background of the case as follows:

> Larry Cline testified that at the time of the robbery in question, he was an assistant manager of a Radio Shack store in Fort Worth. He testified that on December 31, 2005, at about 2:00 p.m., a man walked into the store wearing a ski mask, gloves, and a red sweatshirt and told Cline to open the cash register. The man motioned underneath his shirt as though he were reaching for something; cline said, "I didn't want to press it, didn't want to find out whether it was a gun." Cline testified that he felt threatened and was in fear of imminent bodily injury. Cline opened the register, and the man took all of the money and walked

out of the store.  He testified that a customer check payable to Radio Shack in the amount of $60.52 was also missing after the robbery.  Later, police brought the check back to the store, along with almost the exact amount of cash taken in the robbery.

Myra Sanchez testified that she was working at the same Radio Shack on the day of the robbery.  When the robber approached the cash register, Sanchez fled to the back office, pressed the "record" button on the store's security camera, and watched the robbery on a video monitor.  The security video was admitted into evidence and played for the jury.  She said that when the robber entered the store, his left arm "was just hanging" but his right hand was "clenched towards the side of his body."  Sanchez said that she was afraid that the robber might cause her bodily harm or kill her.

Dwayne Modosett was the store manager on the day of the robbery.  He saw the robber enter the store, approach Cline, and take the money out of the cash register.  The robber was wearing a dark red or maroon sweatshirt or sweater, gloves, and a ski mask. Modosett testified that the robber clutched his hand to his side, which made Modosett think he had a gun.  When the robber left the store, Modosett saw him cut across a parking lot and remove the ski mask.  He followed the robber for a couple of blocks, by which time "there were already cops all over the area," so he returned to the store.  Modosett said the police later returned with about $2,200.  When the police returned the money, they had a person in the back seat of their squad car; Modosett said it "looked pretty much like the same guy."

Marvin Roberson testified that at about the time of the robbery, he saw a man wearing a burgundy pullover-type shirt walking down the street near Roberson's house.  The man broke into a run and pulled off the burgundy shirt, revealing a white sleeveless t-

3

shirt underneath. Roberson watched the man cut between two nearby houses. A police car drove past, and Roberson got into his truck, followed the police car, and waived it down. The officer told him that he was chasing a man involved in a robbery, and Roberson told the officer where he had seen the man run.

Fort Worth police officer B.A. Gentry is the police officer to whom Roberson made his report. Gentry drove to the house where Roberson had last seen the man and called for backup. An officer aboard a police helicopter, which was hovering overhead, told Gentry via radio that a man wearing blue jeans and a white t-shirt was running from the back of the house. Gentry ran to the backyard and saw a man jumping over the back fence. Gentry chased and captured the man, whom he identified as Appellant. He handcuffed Appellant, patted him down for weapons, and put him in the back seat of officer Patrick Conaway's patrol car.

Conaway drove Appellant back to the residence, and Gentry walked back. Gentry then removed Appellant from Conaway's car and checked the cushions of the seat where Appellant had been sitting. He explained that Fort Worth patrol cars have padded seats, rather than molded seats, and that "many times when you arrest somebody, they stuff narcotics, they stuff money, they stuff any kind of evidence, guns, underneath the back . . . seat;" therefore, he always checks for contraband in the back seat of a patrol car after it transports a suspect. When he lifted up the seat where Appellant had been sitting, he found a large amount of cash and a check from Radio Shack. Gentry then arrested Appellant and conducted a search incident to arrest. He found another large amount of cash in Appellant's right front pocket. Gentry said this was significant because the Radio Shack security video showed the robber removing money from the register and putting it in his right front pocket. The video also showed that the robber was wearing shoes like those Appellant was wearing at the time of his arrest. Gentry said that only five

minutes elapsed between the time he heard the robbery reported on the dispatch radio at 2:07 p.m. and the time he had Appellant in custody. On cross-examination, Gentry explained that in his initial pat-down of Appellant, he was only looking for weapons and that the search incident to Appellant's arrest was much more thorough.

Officer Conaway testified that, in accordance with Fort Worth Police Department practice, he had searched his patrol vehicle thoroughly when he went on duty on the day of the robbery and found no contraband inside. He said that he did not see Appellant put the money under the car seat, but explained that a metal partition blocked part of his view and that he had a limited view of Appellant in his rear-view mirror.

Officer Martin Chazaretta testified that he was the first officer to count the cash found in Conaway's car and on Appellant's person. He counted $2,229; the store reported that $2,228.04 was missing in the robbery.

*Howard*, 2008 WL 902767, at *1-2.

## II.  Issues

In three grounds, applicant claims he was denied effective assistance of counsel at trial and on appeal and the state engaged in prosecutorial misconduct.  (Pet. at 7)

## III.  Rule 5 Statement

Respondent believes applicant has exhausted his state court remedies as to the claims raised as required by 28 U.S.C. § 2254(b)(1)(A).  (Resp't Ans. at 7)  Nor does it appear the

petition is untimely or subject to the successive petition bar.

## IV.  Discussion

### A.  *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case.

*Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id*. Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

**B.  *Ineffective Assistance of Counsel***

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001)

(applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel an applicant must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688.

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where, as here, a applicant's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the standard set forth in *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

Applicant contends he received ineffective assistance of trial and appellate counsel. Applicant was represented at trial

by William H. "Bill" Ray and on appeal by Brian Wayne Salvant. The state habeas judge, who also presided over applicant's trial, conducted a hearing by affidavit and entered findings of fact, which were adopted by the Texas Court of Criminal Appeals, refuting applicant's ineffective-assistance claims. (State Habeas Supp. R. at 1A, 19, 89; State Habeas 2nd Supp. R. at 4-11) Applying the *Strickland* standard to its factual findings, the state habeas court concluded applicant had failed to demonstrate that counsel's representation was deficient or that but for counsel's alleged acts or omissions, the result of his trial or appeal would have been different. (State Habeas 2nd Supp. R. at 12-19) Applicant has failed to rebut the findings of fact by clear and convincing evidence, therefore the court defers to those findings.

### (1)  Trial Counsel

Applicant claims his trial counsel was ineffective by failing to (1) file a motion to quash the "duplicitous" indictment, (2) make a timely objection to the state's introduction of extraneous-offense evidence of a prior robbery during the punishment phase, (3) investigate a prior robbery conviction in which he was alleged to have committed aggravated robbery with a deadly weapon, a firearm, when he was convicted of

9

the lesser offense of robbery and there was no deadly weapon finding, (4) conduct an adequate pretrial investigation by having DNA testing done on the glove so as to advance his only defense of mistaken identity, (5) object to the state's remarks during jury argument that he was previously convicted of aggravated robbery and that "the only sentence that would satisfy the community was a life sentence," (6) object to the state's use of perjured testimony by Patricia Shelton that applicant robbed her at gunpoint 12 years in his prior criminal case and lost her job because she gave him the money, (7) properly advise him about his right to testify and admissibility of his prior convictions on cross-examination, (8) move to suppress the pre-trial and in-court identification by Modosett, and (9) introduce exculpatory evidence in the form of the blue jeans he was wearing when arrested to show it would have been impossible to put $2900 in small bills in the pocket. (Pet. at 7 & Attach. at 1; Pet'r Brief in Support at 1-5)

In his original affidavit, trial counsel responded to these allegations, in relevant part, as follows:

> Applicant was charged with robbery, and he had seven prior convictions for robbery. He was offered 18 years by the State and rejected that offer. The jury gave him 60 years.

10

Applicant claims that I should have quashed the indictment. In my opinion, there is nothing wrong with the indictment. I therefore did not file such a motion. Although there were two victims alleged in two paragraphs, the reality is it was two counts. This is because there were two separate offenses out of the same transaction alleged. The law requires that the sentences for those robberies be concurrent. Since the facts of each robbery were in the same transaction, I felt it was better to not ask for a severance. If the State was forced to elect which case to try, the sentences could have been ordered to be served consecutively.

The real problem in this case for Applicant from a sufficiency standpoint was that he left a check taken in the robbery in the back of the police car. The clerk in the Radio Shack store had only made the particular sale and received the check from a customer right before the robbery. For Applicant to prevail in these cases, the jury would have had to believe that the police were somehow involved in the robbery and then placed the check under the seat in the patrol car that Applicant was placed in after being arrested. This check essentially validated any problem in the case with identity. Applicant fit the description and the witnesses identified him. He ran off after the robbery and the initial responding officer went to an area nearby where the thieves run to in that part of town. The officer's hunch was exactly correct because Applicant had ran that way, and persons in the area directed the police to Applicant. He was caught almost immediately and identified.

. . .

(State Habeas Supp. R. at 1A-3) (citations to the record omitted)

On the state's motion, counsel later supplemented his

original affidavit to respond to the following relevant

inquiries:

a. Did counsel conduct a pre-trial investigation and if so, what did counsel do to investigate this case;

**RESPONSE: I did conduct an investigation of the case. I went to see applicant in the jail and got applicant's version of the case. I got an investigator appointed to assist. I reviewed the facts of the case. A witness was located and applicant was asked on the record if he wanted to call that person, and he said no. RR-3, Page 167.**

c. Why did counsel not file a motion to suppress the pre-trial and in-court identifications of State's witness Modosett;

**RESPONSE: I don't have a particular reason for not filing a motion to suppress, I generally don't do it when there are several persons who can identify a person. You only solidify their identifications. I would point out that on cross examination, I showed that Mr. Modosett was unable to identify Applicant. RR-3, Page 52. Additionally, even if no witness could have identified Applicant, the fact that he was caught with the check from the Radio Shack store within minutes after the robbery is legally sufficient evidence to have convicted him.**

d. Why did counsel not introduce exculpatory evidence on applicant's behalf;

**RESPONSE: I don't remember there being any evidence that showed Applicant as not guilty. Applicant refused to testify.**

e. Why did counsel not timely object to the State's admission of evidence of extraneous bad acts during the punishment phase of the trial;

**RESPONSE: I do not agree with this statement. Specifically, I did object to the admission of**

extraneous bad acts, and further the trial court sustained this objection. Applicant says on page 2 of his "Trial Counsel's Affidavit" that I did not object. The fact of the matter is I did exactly that, and Judge Gill sustained the objection. Based upon that ruling, the State called no further witnesses.

f.   Did counsel have any knowledge that punishment witness Patricia Shelton's testimony was perjured; if so, why did counsel not ask for a mistrial at the punishment phase?

RESPONSE:  I have no knowledge that Patricia Shelton's testimony was perjured. Ms. Shelton was the victim of a previous robbery that Applicant had pled guilty to in 1995, and received an 18 year sentence.

g.   Why did counsel not require the State to elect which transaction it would rely on for conviction;

RESPONSE:  I have answered this before in my last affidavit concerning a motion to quash. I did not require the State to elect between counts because the law requires that the sentences for those robberies be concurrent. Since the facts of each robbery were in the same transaction, I felt it was better to not ask for a severance. If the State was forced to elect which case to try, the sentences could have been ordered to be served consecutively. Section 3.04(b) of the Texas Penal Code specifically states that if severed, the trial court can, at its option, order that the sentences be served consecutively. For this reason, I did not ask that the paragraphs, which are actually counts, be severed.

h.   Did counsel investigate applicant's prior convictions?

RESPONSE:  I did review the prior convictions of Applicant. State's Exhibit 18 contains the prior convictions of Applicant, a certification page, and a fingerprint card. This is a document that is prepared by the prison authorities and is self authenticating.

> The things that I check in these documents are whether
> the defendant is sentenced within the proper range of
> punishment, whether he had counsel, and whether there
> was a notice of appeal.  In each of Applicant's prior
> convictions, he was sentenced within the range of
> punishment, had counsel, did not appeal, and further,
> the judge, prosecutor, and Applicant's counsel are all
> persons that I personally know to be licensed
> attorneys.  I further recognize the judge's signature.
> There was absolutely nothing wrong with these
> judgments.

(State Habeas Supp. R. at 11-12, 21-24)

The state habeas court entered findings of fact consistent with counsel's testimony and, applying the *Strickland* standard, concluded applicant had failed to show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability the results of the proceedings would have been different but for counsel's alleged acts or omissions.  (State Habeas R., Clerk's 2nd Supp. R., at 4-8, 12-17)  The Texas Court of Criminal Appeals denied habeas relief on the habeas court's findings.

Having reviewed the entirety of the record, the state courts' adjudication of applicant's claims is not unreasonable nor is it contrary to or involve an unreasonable application of *Strickland*.  The state courts determined the indictment was not defective under state law. (State Habeas 2nd Supp. R. at 4, 14)

14

Thus, any objection by counsel to the indictment would have been futile. Furthermore, the bulk of applicant's claims are largely conclusory and lack any evidentiary or legal support. The remaining claims are contradicted by the record, involve strategic decisions by counsel, or would have required counsel to make frivolous motions or objections, which are either insufficient to raise a constitutional issue and/or outside this court's preview on federal habeas review. *See Strickland*, 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for post-conviction relief on the grounds of ineffective assistance of counsel); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) (holding conclusory arguments are insufficient to support claim of ineffective assistance); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections"). Even if applicant could demonstrate deficient performance, applicant has not shown a reasonable probability that counsel's acts or omissions affected the outcome of the guilt/innocence phase given the overwhelming evidence of his guilt or that, but for counsel's alleged errors, his sentence would have been significantly less harsh. *See Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008).

**(2)  Appellate Counsel**

Applicant contends appellate counsel was ineffective by failing to (1) challenge the legal sufficiency of the evidence to support his conviction for the robbery of Myra Sanchez, (2) raise the issue of double jeopardy when there was only one theft of property, (3) raise the issue of trial court error because the trial court treated an alternate paragraph as an additional count in the indictment, and (4) properly brief his claim that the trial court abused its discretion by starting voir dire when one panelist was not present.[1]  (Pet. at 7 & Attach. at 6-7; Pet'r Brief in Support at 7)

Appellate counsel responded to these allegations as follows:

> The issues Mr. Howard presents lack merit.  The trial court did not abuse it's discretion to the

---

[1]The state appellate court addressed the issue as follows:

> The record shows that at the start of voir dire, the trial court noted, "We're . . . having some trouble finding [panelist] No. 37. . . . . He's probably just running late.  So we can start without him, and if I can qualify him without holding things up too much, I will do it."  The record does not mention panelist number 37 again."
>
> By failing to object to the trial court's decision to proceed with voir dire without panelist number 37, Appellant forfeited his complaint.

*Howard*, 2008 WL 902767, at *3.

16

additional count in that two people were the victim of the robbery and those two individuals were reflected in each count. Next, there was no issue of double jeopardy to raise. The next argument is directed to trial counsel and since I was not trial counsel only appellate counsel, it is a moot point. However, I did not feel as if trial counsel was ineffective as to the alternative paragraph or additional count and that is why that issue was not raised on appeal. [Issue 1 above] raised by Mr. Howard is also moot because I did raise the issue of insufficient evidence. Mr. Howard claims that I did not, thus I have no response to this point other than the brief itself. In Mr. Howard's final claim, the record is clear. Appellate counsel can only rely on the record and cited the reporter's record vol. 2 p. 11 as it appeared in the record. Appellate counsel did raise the issue of improper voir dire for the reasons stated in the brief and appellate counsel stands behind his brief as it was filed.

(State Habeas Supp. R. at 5-6; State Habeas Supp. R. at 8)

The state habeas court entered findings consistent with counsel's affidavit, and, entered the following conclusions of law:

64. Applicant was convicted of two counts of robbery because he committed two offenses of robbery during one criminal episode.

65. The trial court did not abuse its discretion by allowing Applicant to be convicted of two counts of robbery.

66. Applicant has failed to prove that appellate counsel was ineffective for failing to raise an issue on appeal claiming that the trial court abused its discretion in allowing him to be convicted of two counts of robbery.

67. The Double Jeopardy Clause of the United States

Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Both the United States and Texas Constitutional provisions speak of double jeopardy in terms of the "same offense" rather than "same transaction."

68. It is well settled the Double Jeopardy Clause of the United States Constitution provides three separate guarantees: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense.

69. Hon. Salvant was not ineffective in not raising a point on appeal claiming that Applicant's convictions violated the double jeopardy clause. Applicant's double jeopardy rights were not violated because he was convicted of two different offenses.

70. Applicant has failed to prove that any error by appellate counsel led to the affirmation of his conviction.

(State Habeas 2nd Supp. R. at 9, 17-18) (citations omitted)

The state court's adjudication of these claims is not unreasonable nor is it contrary to or involve an unreasonable application of *Strickland*. The record supports counsel's assertion that he raised a sufficiency of the evidence claim on appeal, and the appellate court determined the evidence was sufficient to show applicant robbed both Cline and Sanchez. *Howard*, 2008 WL 902767, at *4. As to applicant's remaining

claims, appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000). It is counsel's duty to choose among potential issues, according to his or her judgment as to their merits and the tactical approach taken. *Jones v. Barnes*, 463 U.S. 745, 749 (1983). Furthermore, prejudice does not result from appellate counsel's failure to assert a meritless claim or a meritless argument. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994). Thus, it follows, that counsel was not ineffective for failing to raise the issues on appeal.

## C. *Prosecutorial Misconduct*

Applicant claims the state engaged in prosecutorial misconduct by eliciting perjured testimony from Patricia Shelton, and reiterating during closing argument, that applicant robbed her at gunpoint and that she lost her job because of the robbery. (Pet. at 7 & Attach. at 7) According to applicant, he was not convicted of robbing Shelton with a gun but, instead, the lesser included offense of robbery by threats with no deadly weapon finding. (Pet. at 7 & Attach. at 7) The state habeas court found there was no evidentiary support in the record that Shelton's testimony was perjurious or that the state knowingly or

intentionally presented perjured testimony at trial.  The court

further found there was no evidence of prosecutorial misconduct

during closing argument because, under state law, the remarks on

the issue were proper as a summation of the evidence and a plea

for law enforcement.  (State Habeas 2nd Supp. R. at 9-10, 18-19)

Deferring to the state court's determination of state law,

the court's adjudication of the claim is not contrary to, or

involve an unreasonable application of, clearly established

federal law, nor is it unreasonable in light of the evidence

presented in the state court.

**(D)  *Evidentiary Hearing***

Applicant requests the court conduct an evidentiary hearing.

Section 2254(e)(2) provides:

> (e)(2)  If the applicant has failed to develop the
> factual basis of a claim in State court proceedings,
> the court shall not hold an evidentiary hearing on the
> claim unless the applicant shows that-
>
> > (A)   the claim relies on-
> >   (i) a new rule of
> > constitutional law, made
> > retroactive to cases on collateral
> > review by the Supreme Court, that
> > was previously unavailable; or
> >   (ii) a factual predicate that
> > could not have been previously
> > discovered through the exercise of
> > due diligence; and
> >
> > (B)   the facts underlying the claim

20

> would be sufficient to establish by clear and
> convincing evidence that but for
> constitutional error, no reasonable
> factfinder would have found the applicant
> guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Applicant has not met the statutory criteria.  The case can be decided on the record, and the interests of justice do not require a hearing.  Further development of the record is not necessary in order to assess the claims.

For the reasons discussed herein,

The court ORDERS the petition of applicant for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as applicant has not made a substantial showing of the denial of a constitutional right.

SIGNED June ___9___, 2011.

_____
JOHN McBRYDE
United States District Judge

21